No. 03-649

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 202

IN THE MATTER OF J.B.K. and J.T.K.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon Cause No. DN-02-01
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Raymond G. Kuntz, Attorney at Law, Red Lodge, Montana
(for Mother, H.K.)

    For Respondent:

        Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

        Judy A. Williams, Assistant Attorney General, Billings, Montana

Submitted on Briefs: April 13, 2004

Decided: August 3, 2004

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     H.K. appeals from the order entered by the Twenty-Second Judicial District Court, Carbon County, terminating her parental rights to J.B.K. and J.T.K. We affirm.

¶2     We address the following restated issues:

¶3     1. Does the District Court's order meet the requirements of § 41-3-609, MCA, for terminating parental rights?

¶4     2. In light of H.K.'s mental disability, does the failure to afford H.K. additional time to complete her treatment plan and change the condition or conduct rendering her unable to parent violate the Americans with Disabilities Act?

## BACKGROUND

¶5     In December of 2001, H.K. and her infant son J.B.K. moved from Georgia to live with her aunt in Montana. H.K. was pregnant with J.T.K. at that time. H.K.'s aunt contacted social worker Georgia Cady from the Montana Department of Public Health and Human Services (Department) to inquire about public assistance for H.K.

¶6     Cady later received a referral regarding H.K. and, after a home visit by Cady, the Department petitioned for emergency protective services and temporary investigative authority regarding J.B.K. in January of 2002. The District Court granted the petition and appointed an attorney and a guardian ad litem for H.K. and a guardian ad litem for J.B.K. After J.T.K. was born, the Department removed him from H.K. and amended its petition to apply to him as well as to J.B.K. The District Court granted the amended petition in March

and appointed a guardian ad litem for both children. After J.T.K.'s removal, H.K.'s aunt moved from the residence.

¶7 In May of 2002, the Department petitioned the District Court to adjudicate J.B.K. and J.T.K. as youths in need of care and to award the Department temporary legal custody for six months. After a hearing in July, the District Court granted the Department's petition in August of 2002.

¶8 The Department also filed a treatment plan for H.K., which the District Court approved in July of 2002 after receiving no objection from H.K.'s attorney. The treatment plan spanned the period from July 15, 2002 to December 15, 2002. It listed a number of tasks, including successful completion of parenting courses.

¶9 In January of 2003, approximately one month after the treatment plan expired, the Department petitioned to terminate H.K.'s parental rights, as well as the parental rights of J.B.K.'s father and J.T.K.'s putative father. The District Court held a hearing on April 4, 2003.

¶10 The Department presented testimony from–and H.K. or her guardian ad litem cross-examined–six witnesses. Dr. Ned Tranel, a clinical psychologist, testified about H.K.'s mental disability and opined that her inability to meet a "minimum standard of parenting" would not change. Murnell Fargo, an employee of the Family Support Network who monitored H.K.'s weekly supervised visits with her children for over a year, testified she had observed no consistent long-term improvement in H.K.'s ability to perceive and respond to the children's needs without prompting. Dena Burt, program director for the Family Tree

3

Center, testified that H.K. had difficulty transferring lessons from parenting classes to different contexts, despite receiving one-on-one instruction based on a class designed for parents with special needs before repeating an infant nurturing class. Toni Jackson, a property manager for H.K.'s apartment building and a former Human Resource Development Council intensive housing case manager, testified that H.K.'s apartment was filthy when she visited it. Social worker Cady and Child Protective Services supervisor Roxanne Roller testified that H.K. had not successfully completed her treatment plan, despite receiving all services available from the Department.

¶11     H.K. testified on her own behalf that she was aware of her disability and its effects on her child care abilities. She asserted she had been trying her hardest to comply with the treatment plan and "working as best as [she] could," but she "would put more effort into it so [she] could get it done" if she had more time. She also felt she could be successful. When asked if she could take care of the children, H.K. replied that she "would try to be the best parent for them," but acknowledged the difference between trying to parent and being able to do so.

¶12     After the hearing, the District Court entered its findings of fact, conclusions of law and order, terminating the parental rights of H.K., J.B.K.'s father, and J.T.K.'s putative father. H.K. appeals. Additional facts necessary to our resolution of the issues are included below.

4

## STANDARD OF REVIEW

¶13 In reviewing a district court's termination of parental rights, we determine whether the statutorily required findings of fact are clearly erroneous, whether the conclusions of law are correct and whether the court abused its discretion in ordering termination. *In re J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, ¶ 7, 67 P.3d 242, ¶ 7 (citations omitted).

## DISCUSSION

¶14 1. Did the District Court's order meet the requirements of § 41-3-609, MCA, for terminating parental rights?

¶15 The District Court terminated H.K.'s parental rights pursuant to § 41-3-609(1)(f), MCA, after finding the children had been adjudicated as youths in need of care, H.K. had not successfully completed her treatment plan, and the condition or conduct rendering her unable to parent was unlikely to change within a reasonable time. H.K. asserts error.

¶16 H.K. first argues the District Court's order violates § 41-3-609(4)(b), MCA, which provides that "[a] treatment plan is not required under this part upon a finding by the court following hearing if . . . two medical doctors or clinical psychologists submit testimony that the parent cannot assume the role of parent." H.K. contends that, because the Department did not present the testimony of two medical doctors or clinical psychologists, it "cannot argue that H.K. is unable to assume the role of parent." Section 41-3-609(4)(b), MCA, has no application here, however. It addresses a circumstance in which no treatment plan is required. As set forth above, the District Court terminated H.K.'s parental rights under a different portion of § 41-3-609, MCA.

¶17     H.K. also argues that the District Court's finding that her conduct or condition was unlikely to change within a reasonable time does not satisfy § 41-3-609(1)(f), MCA, because she "was not given enough time to successfully complete the treatment plan . . . ." Section 41-3-609(1)(f), MCA, does not provide that a parent must be given as much time as it takes for successful completion of a plan. Further, § 41-3-609(2)(a), MCA, requires a court to consider, among other things, a parent's mental deficiency in determining whether the parent's conduct or condition is likely to change within a reasonable time. When construing a statute, we ascertain and declare its terms or substance and do not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA; *In re Adoption of Snyder*, 2000 MT 61, ¶ 16, 299 Mont. 40, ¶ 16, 996 P.2d 875, ¶ 16. The District Court properly considered § 41-3-609(2)(a), MCA, here.

¶18     Moreover, the determination that H.K.'s conduct or condition was unlikely to change within a reasonable time is a finding of fact pursuant to § 41-3-609(1)(f)(ii), MCA. As stated above, we review a finding to determine whether it is clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made. *In re J.C.*, 2003 MT 369, ¶ 7, 319 Mont. 112, ¶ 7, 82 P.3d 900, ¶ 7 (citation omitted). Here, H.K. does not argue the District Court's finding was clearly erroneous. Furthermore, our review of the record reveals ample testimony from several witnesses that H.K.'s conduct had not improved in the year since the Department became involved and her condition was unlikely to change. We conclude the

6

District Court's finding that H.K.'s conduct or condition was unlikely to change within a reasonable time is supported by substantial credible evidence and is not otherwise clearly erroneous.

¶19 Finally, H.K. contends the District Court erred in determining her conduct or condition was not likely to change within a "reasonable time," as set forth in § 41-3-609(1)(f)(ii), MCA, because the Americans with Disabilities Act (ADA) requires an extension of the "reasonable time" to account for her disability. We observe that H.K. cites to no authority pursuant to which the ADA has been engrafted onto or into § 41-3-609(1)(f)(ii), MCA, as required by Rule 23(a)(4), M.R.App.P. We do not address arguments unsupported by authorities. *See, e.g.*, *In re A.R.*, 2004 MT 22, ¶ 10, 319 Mont. 340, ¶ 10, 83 P.3d 1287, ¶ 10. Therefore, we decline to address H.K.'s argument here. In any event, H.K.'s primary contention in this case relates to the ADA, and we address it below.

¶20 We hold that H.K. has failed to establish that the District Court's order does not meet the requirements of § 41-3-609, MCA.

¶21 2. Does the failure to afford H.K. additional time to complete her treatment plan and change the condition or conduct rendering her unable to parent violate the ADA?

¶22 H.K. argues that, because she is developmentally disabled, the ADA entitles her to more time to successfully complete her treatment plan and to change the conduct or condition currently rendering her unfit to parent. She asserts the Department failed to provide a reasonable modification for her disability and discriminated against her by failing

7

to afford her additional time to complete her treatment plan. The District Court did not address H.K.'s ADA-related arguments.

¶23    The pertinent portion of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to a regulation promulgated under the ADA, a public entity must make reasonable modifications in its policies, practices, or procedures if necessary to avoid discrimination on the basis of a disability, unless the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

¶24    We have not addressed whether the ADA applies to parental termination proceedings in Montana. *See In re A.M.*, 2001 MT 60, ¶ 66, 304 Mont. 379, ¶ 66, 22 P.3d 185, ¶ 66. Many courts addressing the issue have held the ADA does not directly apply to termination proceedings, either because the ADA creates a separate right of action or because termination proceedings are not among the public "services, programs, or activities" described in 42 U.S.C. § 12132. *See, e.g.*, *In re Doe* (Haw. 2002), 60 P.3d 285, 291; *In re B.S.* (Vt. 1997), 693 A.2d 716, 720. A few courts have applied the ADA to a state agency's provision of services prior to a termination proceeding, but have noted a parent must raise such a claim in a timely manner so that reasonable accommodations may be made. *See, e.g.*, *In re Adoption of Gregory* (Mass. 2001), 747 N.E.2d 120, 126-27. One court suggested the ADA may be raised as an affirmative defense in a termination proceeding, but held the mother

8

waived the defense by failing to plead it. *In re C.M.* (Tex. App. 1999), 996 S.W.2d 269, 270.

¶25    Other courts have declined to directly address whether the ADA applies to termination proceedings. For example, the Washington Court of Appeals rejected a claim by developmentally disabled parents that the state agency's failure to provide specialized parenting classes violated the ADA. That court determined the agency had provided all reasonably available services and the services were modified to accommodate the parents' specific disabilities. It concluded that the agency's efforts satisfied state statutory requirements and resulted in "reasonable accommodation" of the parents' disabilities. *In re Welfare of A.J.R.* (Wash. App. 1995), 896 P.2d 1298, 1302. In addressing a mother's assertion of an ADA violation based on a failure to offer her services specifically tailored to her cognitive skills, the Maine Supreme Court merely determined that the record belied the mother's claim of lack of services tailored to her needs and established the agency had "offered a number of services that took [the mother's] pace and cognitive skills into account." *In re Angel B.* (Me. 1995), 659 A.2d 277, 279. Like the Washington and Maine courts, we need not directly address whether the ADA applies to termination proceedings in the present case.

¶26    Noting H.K.'s intellectual limitations, the District Court determined clear and convincing evidence demonstrated that H.K.'s "conduct and/or condition" was unlikely to change within a reasonable time and that, "even if given additional time, it is extremely unlikely that [H.K.] will be able to successfully complete the original treatment plan and the

9

subsequent treatment plans that would be necessary before she could adequately parent J.T.K. and J.B.K." The District Court made extensive findings based on testimony at the hearing. Among other things, it relied on Tranel's opinion that H.K. could not change her level of intellectual functioning, Fargo's concern about H.K.'s failure to demonstrate a consistent long-term improvement in recognizing her children's needs without prompting, and H.K.'s inability to identify a specific thing she would do given more time, other than try to obtain her GED.

¶27 On appeal, H.K. emphasizes Roller's testimony that, when the treatment plan was designed, she foresaw H.K. may have needed more time to complete it. Roller also testified, however, that she believed at the time of the hearing that an extension of time would not allow H.K. to successfully complete the treatment plan or adequately care for her children. The court's findings regarding Tranel's and Fargo's testimony are consistent with this belief.

¶28 H.K. does not dispute that the Department offered her every available service, and the record reflects that the Department attempted to accommodate H.K.'s disability by allowing her to repeat the infant nurturing class and providing her individual classes based on a special needs program. Moreover, as discussed above, the District Court determined clear and convincing evidence established that H.K. likely could not successfully complete treatment plans or become capable of parenting, even if given additional time. We conclude the Department took H.K.'s disability into account in administering her treatment plan and in providing services which took into account her special needs.

¶29 We note several witnesses testified that H.K. loves her children very much and is willing to parent them. Unfortunately, love and willingness are sometimes not sufficient to establish fitness to parent. *See*, *e.g.*, *In re S.C.*, 2003 MT 93, ¶ 24, 315 Mont. 188, ¶ 24, 68 P.3d 685, ¶ 24; *In re Custody and Parental Rights of P.M.*, 1998 MT 264, ¶ 24, 291 Mont. 297, ¶ 24, 967 P.2d 792, ¶ 24.

¶30 We hold the District Court took H.K.'s disability into account in determining her conduct and condition were unlikely to change within a reasonable time and did not abuse its discretion in terminating her parental rights.

¶31 Affirmed.


/S/ KARLA M. GRAY


We concur:


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER