No. 04-231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 320

IN THE MATTER OF
A.C., T.C., and C.W.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDJ 2003-150Y
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Carl Jensen, Attorney at Law, Great Falls, Montana

    For Respondent:

    Honorable Mike McGrath, Montana Attorney General, Ilka Becker, Assistant
Attorney General, Helena, Montana; Brant S. Light, Cascade County
Attorney, Sarah Corbally, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: September 14, 2004

Decided: November 16, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 P.H., mother of A.C., T.C., and C.W., appeals the judgment of the Eighth Judicial District Court, Cascade County, awarding G.C., the father, custody of A.C. and T.C., while also dismissing her case as it relates to the Department's involvement.

¶2 We address the following issue on appeal and affirm: Did the District Court err in awarding G.C. custody of A.C. and T.C.?

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 P.H. has three children, A.C., T.C., and C.W. G.C. is the father of A.C. and T.C.

¶4 On September 3, 2003, the Department of Public Health and Human Services (the Department) filed a Petition for Emergency Services, Adjudication as Youth in Need of Care and Temporary Legal Custody with regard to A.C., T.C., and C.W. after receiving a report that P.H. was using drugs in front of the children; that P.H. and her boyfriend were seen fighting in front of the children; and that the children had been eating only rice.

¶5 On September 11, 2003, the District Court held a show cause hearing. Thereafter, the District Court found that probable cause existed to support the Department's concerns that the children were abused and neglected or were in danger of abuse and neglect. The District Court determined that the Department had the authority to move the children to either a foster home or a kinship placement, once such placement was found. After initially being placed with their maternal grandmother, the children entered a receiving home in November 2003.

¶6 On December 4, 2003, the District Court held an adjudicatory hearing, wherein the children were adjudicated as youths in need of care. Thereafter, a dispositional hearing was set and rescheduled several times until February 26, 2004. At the dispositional hearing, the State of Montana (the State) asked that A.C. and T.C. be placed with G.C., since the Department had investigated the placement and had determined that the placement was in the best interests of the children.

¶7 The District Court ultimately ordered that A.C. and T.C. be placed with G.C. and that their case be dismissed, with the Department having no further obligation to provide services. Because G.C. is not C.W.'s father, nor could C.W.'s father be located, the District Court found that placement of C.W. with his maternal aunt was in C.W.'s best interests. C.W.'s case is ongoing pending P.H.'s completion of her treatment plan.

¶8 P.H. now appeals the District Court's Order placing A.C. and T.C. with G.C.

## STANDARD OF REVIEW

¶9 We review a district court's findings of fact to determine if those findings are clearly erroneous. *In re J.B.K.*, 2004 MT 202, ¶ 13, 322 Mont. 286, ¶ 13, 95 P.3d 699, ¶ 13. We review a district court's conclusions of law to determine if the district court interpreted them correctly. *In re J.B.K.*, ¶ 13.

## DISCUSSION

¶10 **Did the District Court err in awarding G.C. custody of A.C. and T.C.?**

¶11 P.H. argues that a due process violation occurred when the State asked the District Court to place A.C. and T.C. with G.C. in Maine, thereby dismissing the case pertaining to

A.C. and T.C. under § 41-3-438(3)(b), MCA. P.H. argues that because she assumed that services would be provided to her and that reunification was the State's ultimate goal, the finality of the State's request "virtually preclude[d]" this reunification possibility. As such, P.H. argues that due process requires that she be afforded notice of the State's intent to place A.C. and T.C. with G.C., "in order to adequately address the request and present evidence as to the best interests of the children." In addition, P.H. argues that the treatment plan and P.H.'s completion of that plan are "property rights," that, under the due process clause, "cannot be taken away arbitrarily."

¶12    The State responds that because P.H. raises her due process argument here for the first time on appeal, this Court should not review it, given that it does not implicate constitutional magnitude. The State also argues that the District Court properly placed A.C. and T.C. with G.C., under § 41-3-438(3), MCA. P.H. had notice of the dispositional hearing and the options available to the District Court at that hearing. As such, the State maintains that "[s]imply because the district court did not pursue the disposition the mother [P.H.] was expecting, does not mean that she lacked notice." In addition, the State argues that once A.C. and T.C. were adjudicated youths in need of care, the Department had custody of the children. Hence, once the Department ensured that G.C.'s home was a safe placement for the children, the State contends that the Department did all that was necessary "for the district court to place the children under Mont. Code Ann. § 41-3-438(3)(b)." We agree.

¶13    Section 41-3-438(3)(b), MCA states:

4

If a child is found to be a youth in need of care . . . the court may enter its judgment, making any of the following dispositions to protect the welfare of the child:

. . .

(b) order the placement of the child with the noncustodial parent, superseding any existing custodial order, and dismiss the proceeding with no further obligation on the part of the department to provide services to the parent with whom the child is placed or to work toward reunification of the child with the parent or guardian from whom the child was removed in the initial proceeding.

¶14 A youth is a "youth in need of care," when that youth "has been adjudicated or determined, after a hearing, to be or to have been abused, neglected, or abandoned." Section 41-3-102(29), MCA.

¶15 In addition, under Article III of the Interstate Placement of Children Compact:

The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

¶16 We do not address P.H.'s due process argument here, as she raises that issue for the first time on appeal. We have repeatedly held that we do not consider issues raised for the first time on appeal, as "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *In re D.H.*, 2001 MT 200, ¶ 41, 306 Mont. 278, ¶ 41, 33 P.3d 616, ¶ 41.

¶17 P.H.'s parental rights have not been terminated. Rather, under its statutory authority, the District Court ordered placement of A.C. and T.C. with their noncustodial parent, G.C., after the Department found that such placement would be in the children's best interests.

5

The Department took the necessary steps to ensure safe placement for the children, as required under the Interstate Placement of Children Compact. In addition, the District Court followed statutory procedure in ordering placement of the children with G.C. and in relieving the Department from any further obligation, as the concern for them being youths in need of care was eliminated by such placement. Accordingly, we hold that the District Court did not err in awarding G.C. custody of A.C. and T.C.

¶18    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE