DA 14-0677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 128N

IN THE MATTER OF:

J.W., F.L., A.W., and T.F.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. CDN 12-153, CDN 12-154,
CDN 12-155, CDN 12-156
Honorable Gregory Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tracy Labin Rhodes, Attorney at Law, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          John W. Parker, Cascade County Attorney, Ryan C. Ball, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  April 8, 2015
Decided:  May 12, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.W. (Mother) appeals from an order of the Eighth Judicial District Court, Cascade County, terminating her parental rights to her four children, J.W., T.F., A.W., and F.L. We affirm.

¶3 On appeal, Mother argues the District Court erred when it considered her failure to complete drug testing; when it found that termination of her parental rights was in the best interests of the children; and when it failed to hold a permanency hearing within the statutory time frame.

¶4 On September 11, 2012, the Department of Public Health and Human Services (Department) received a report that Mother had been assaulted by her partner, C.R., who is the birth father of T.F. The Department's investigation revealed a significant pattern of domestic violence and sexual assault perpetrated by C.R. against Mother. The children were interviewed, and each expressed love for Mother but fear of C.R. The children had witnessed incidents of violence in the home. C.R. had reportedly also hit J.W. and T.F.

2

¶5 Mother stipulated to adjudication of the children as youths in need of care on November 28, 2012. Temporary legal custody (TLC) was granted to the Department. On January 9, 2013, Mother agreed to a treatment plan including the following tasks: address anger management issues; address mental health issues; actively participate in domestic violence counseling; complete a parenting assessment and parenting classes; refrain from using non-prescribed drugs; attend scheduled visits with the children; and maintain a safe and stable home environment. At a status hearing on December 11, 2013, counsel for the children moved to amend Mother's treatment plan to include drug testing, based on the children's concerns about Mother's possible drug use. The motion was denied because the Department had no evidence of ongoing drug use by Mother.

¶6 On December 26, 2013, the Department moved to extend TLC for another six months. At a hearing on the motion, the Department reported that Mother was making some progress on her treatment plan, but neither the Court Appointed Special Advocate (CASA) nor the attorney for the children believed that progress was significant. The District Court extended TLC for three months, noting that "if substantial progress hasn't been made by the next review hearing . . . the State needs to evaluate where this case is going then at that point." On April 2, 2014, based on reports that Mother was continuing to make progress, the District Court granted another extension of TLC for three months.

¶7 On April 21, 2014, Mother attended a birthday party at her parents' house and was involved in a violent confrontation with her sister. Some of the children witnessed the incident. Mother was asked to submit to voluntary urinalysis due to her behavior. The

3

test was positive for methamphetamine. At a status hearing on June 18, 2014, the District Court noted that the case had continued for nearly two years, and informed counsel for the Department that "at this point . . . the options are really that you file for termination or you move to dismiss." The Department represented that it would file a petition for termination of Mother's parental rights. The District Court extended TLC for a period of 60 days to allow the Department time to prepare its petition.

¶8 The termination hearing was held on August 14, 2014. Child Protection Specialist Tonya Carpenter testified that Mother's counseling related to anger management, mental illness, and domestic violence were all ongoing, and she had not completed those aspects of her treatment plan. Carpenter testified that Mother's "attendance was an issue with several providers" throughout the duration of the case. Mother had not consistently maintained a safe and stable residence because of continued concerns regarding drug use and domestic violence. Mother had resumed a relationship with F.L.'s birth father, who was a violent drug user. The District Court terminated Mother's parental rights, finding she had failed to implement strategies learned in domestic violence counseling; was discharged from family based services due to missed appointments; had not completed any chemical dependency treatment; and had not maintained a safe and stable home. The District Court concluded that Mother's condition was unlikely to change within a reasonable time and that continuation of the parent-child legal relationship would likely result in ongoing abuse and neglect.

4

¶9 A district court's termination of parental rights is reviewed for abuse of discretion. *In re H.R.*, 2012 MT 290, ¶ 9, 367 Mont. 338, 291 P.3d 583. Findings of fact are reviewed for clear error, and conclusions of law are reviewed for correctness. *In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691. A court may order termination of parental rights upon a finding of clear and convincing evidence that the child is an adjudicated youth in need of care, an appropriate treatment plan has not been complied with or has not been successful, and the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Partial or substantial completion of a treatment plan is insufficient. *In re D.B.*, 2004 MT 371, ¶ 41, 325 Mont. 13, 103 P.3d 1026.

¶10 Mother argues the District Court erred when it based its conclusion that her treatment plan had not been complied with on her failure to complete chemical dependency treatment. Mother argues this was never included in her treatment plan, and so cannot be evidence of noncompliance. We acknowledge that the District Court's references to Mother's failure to complete chemical dependency treatment were not appropriate to its discussion of her treatment plan compliance. The record indicates, however, that many other aspects of Mother's treatment plan were not complied with. She did not show up for individual and family counseling appointments, did not understand and apply what she learned in counseling, and did not maintain a safe and stable home for the children. Her violent behavior, continued involvement in abusive relationships, and failure to actively and consistently participate in counseling over nearly

5

two years demonstrated that her condition was unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.

¶11 Mother also argues that the District Court erred when it concluded that it was in the best interests of the children to terminate her parental rights, because the testimony showed that the children were closely bonded to Mother. A district court is required to "give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA. Furthermore, when a child has been in foster care for 15 of the most recent 22 months, termination of parental rights is presumed to be in the child's best interest. Section 41-3-604(1), MCA. The children were in protective care for 23 months, from September 2012 until August 2014. After hearing evidence of extensive violence and drug use engaged in by Mother and her partners, either in front of the children or in the home, the District Court concluded that the children's need for permanency and security was best served by termination of Mother's parental rights. Although the bond between Mother and the children was undisputedly loving, "love and willingness are sometimes not sufficient to establish fitness to parent." *In re J.B.K.*, 2004 MT 202, ¶ 29, 322 Mont. 286, 95 P.3d 699.

¶12 Finally, Mother asks this Court to find that the District Court committed plain error by failing to hold a permanency hearing within 12 months of the children's first 60 days of removal from the home. Section 41-3-445(1)(a)(i)(B), MCA. The District Court did not hold a permanency hearing within the required timeframe. Mother did not raise this issue in the District Court, and asks us to exercise our discretionary power of plain

error review. We exercise plain error review only where "'failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.'" *In re J.S.W.*, 2013 MT 34, ¶ 15, 369 Mont. 12, 303 P.3d 741 (quoting *State v. Gunderson*, 2010 MT 166, ¶ 99, 357 Mont. 142, 237 P.3d 74). Our review of the proceedings here reveals that the District Court was, at all times, well aware of the children's placements and issues affecting their options for permanency. We are therefore not convinced that failure to review this claimed error will result in a manifest miscarriage of justice.

¶13    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of relevant standards of review.

¶14    Affirmed.


/S/ LAURIE McKINNON

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA

7