ORIGINAL

DA 25-0707

FILED
06/09/2026
Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA
Case Number: DA 25-0707

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 125

IN THE MATTER OF:

R.J.F.,

A Youth in Need of Care.

FILED
JUN 0 9 2026
Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 23-294
Honorable Thomas Pardy, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Laura Reed, Attorney at Law, Missoula, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

Scott Twito, Yellowstone County Attorney, Amanda Tiernan, Deputy
County Attorney, Billings, Montana

For Foster Parents J.A. and B.A.:

Joseph M. Raffiani, Raffiani Law Firm P.C., Billings, Montana

Submitted on Briefs:  April 29, 2026

Decided:  June 9, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Appellant R.F. (Mother) appeals the order of August 18, 2025, from the Thirteenth Judicial District Court, Yellowstone County, granting primary custody of R.J.F. (Child) to the foster parents and dismissing the child dependency cause. We reverse the District Court's August 18, 2025 Order to Dismiss and remand to the District Court to strike foster parents' Motion for Dismissal and to issue an order dismissing cause DN 23-294 based on Mother's successful completion of her treatment plan, meeting the conditions for return, and being a fit parent.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erred in granting primary custody to the foster parents and dismissing the cause under § 41-3-438(3)(d), MCA.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This is Mother's second appeal of this cause. The Montana Department of Health and Human Services, Child and Family Services Division (Department), became involved with Mother at the time of Child's birth in October 2016. Eleven months after its initial petition (DN 16-407) for emergency protective services, and only five months after Mother's treatment plan was put in place, the Department sought termination of Mother's parental rights. Following hearing on the petition, the District Court terminated Mother's parental rights to Child. Mother appealed. On appeal, this Court determined the Department failed to provide Mother with the required reasonable efforts to avoid removal and to reunify her with Child.[1] Given this, combined with the substantial positive change

---

[1] A more detailed account of the factual and procedural background and the reasonable efforts

Mother had already accomplished by the time of the termination hearing, the District Court erred in its determination that the Department established that the condition rendering Mother unfit to safely parent, namely her substance use disorder, was not likely to change within a reasonable time. As such, we remanded "to the District Court for the Department to provide Mother with reasonable efforts to reunify her with Child." *In re R.J.F.*, 2019 MT 113, ¶ 48, 395 Mont. 454, 443 P.3d 387.

¶4     This appeal must be understood in light of our prior remand. In *In re R.J.F.*, we did not remand for the Department to facilitate a permanent custodial arrangement between Mother and the foster parents. We remanded for the Department to provide Mother reasonable efforts to reunify her with Child. *In re R.J.F.*, ¶ 48. The Department's statutory obligation after remand therefore was not merely to keep Child safe in foster placement; it was to work, consistent with Child's safety, toward restoration of Mother's care and custody. When Mother thereafter completed the tasks required of her and met the conditions for return, the Department's role was to return Child to Mother's care and dismiss the cause; it could not condition dismissal of the child-welfare case on a Title 40 arrangement that transferred primary physical custody to the foster parents.

¶5     In the months following remand, Mother successfully completed her treatment plan and met the conditions for return of Child to her care. Despite this, the Department did not timely seek dismissal of the cause by placing Child with Mother. Mother asserts that despite her successful completion of her treatment plan and meeting the conditions for

---

analysis can be found in *In re R.J.F.*, 2019 MT 113, 395 Mont. 454, 443 P.3d 387.

return of Child to her care, the Department refused to return Child to her care or allow her to relocate with Child to California where she had family support. Mother reports the Department informed her it would not dismiss her case unless she agreed to enter into a parenting plan with the foster parents. Fourteen months after this Court remanded the case to the Department with the directive to provide Mother reasonable efforts to reunify her with Child—and several months after Mother successfully completed her treatment plan—the Department still had not dismissed the cause. On August 7, 2020, Mother signed a parenting plan (the Plan) drafted by foster parents' attorney in DR 20-801.[2] The court adopted the Plan on August 14, 2020. Less than three weeks later, the Department sought dismissal and DN 16-407 was dismissed.

¶6 The Plan in DR 20-801 is fairly generic. It does not assert that it establishes, or intends to establish, in foster parents a parental interest under § 40-4-228(1), MCA, or a child-parent relationship under § 40-4-211(4)(b), MCA. The Plan does not refer to foster parents as "parents"; generally it uses "the parties" and occasionally refers to Mother as Child's mother. At the end of the document, the district court ordered[3]:

> This Court having reviewed the foregoing Parenting Plan and finding that the Plan is in the best interest of the minor children of the parties,
>
> IT IS HEREBY ORDERED that the foregoing Parenting Plan of the parties is hereby adopted by the Court as being in the best interest of the children. Both parties are ordered to adhere to said parenting Plan.

---

[2] Foster parents at times inaccurately cite this cause as DR 20-1801.

[3] Further, demonstrating its generic nature, it is noted the District Court refers to the Plan being "in the best interests of the children" when Child is the only subject of the Plan.

4

The district court's order adopting the Plan contains no findings, conclusions, or order establishing foster parents a parental interest or parent-child relationship under §§ 40-4-228(1) or -211(4)(b), MCA. The Plan generally appears to be an agreement, with no stated consideration, allowing the foster parents to care for Child during specified periods; it does not confer constitutional or legal parental status to the foster parents. Further, upon review of the pleadings of record in DR 20-801, the Plan is the initiating pleading—no petition was filed seeking for establishment of a parenting plan pursuant to Title 40, or a parental interest or parent-child relationship under §§ 40-4-228(1) or -211(4)(b), MCA.

¶7      In December 2020, Mother gave birth to a second child, M.P., who remained in her care without Department involvement. Over three years later, after Mother experienced relapse and criminal charges,[4] the Department filed the petition in this cause, DN 23-294. Child and M.P. tested positive for methamphetamine exposure and Child and his sister were removed from Mother's care on December 1, 2023. Child was placed full-time with the foster parents; M.P. was placed with her father, R.P.

¶8      Thereafter, Mother stipulated to show cause relief and on February 21, 2024, stipulated to adjudication of Child as a Youth in Need of Care (YINC). Mother began work on her treatment plan. By the May 15, 2024 status hearing, Mother had completed her GED, been accepted into college, completed parenting classes, and consistently tested

---

[4] Mother was charged with criminal endangerment for exposing the children to methamphetamine along with a felony drug charge.

negative for drugs since the outset of the case. In June 2024, Mother moved in with M.P.[5] and R.P., whom she had married, and gave birth to a third child, P.P., who remained in her care under an in-home safety plan.

¶9 At the August 7, 2024 status hearing, the Department advised the court Mother had completed all treatment-plan tasks and had ongoing visitation twice weekly with Child. Mother questioned the continued supervision of visits despite eight months of negative tests and full compliance. One week later, the Department sought a six-month extension of legal custody, supported by an affidavit of CPS Timm, who attested reunification was in Child's best interest and that Mother had completed her treatment plan and met all conditions for Child's return.[6] CPS Timm related that the Department sought extension only until resolution of Mother's pending criminal charges—the criminal endangerment and felony drug offense charges at the outset of the case.

¶10 At the August 21, 2024 hearing, the Department requested approval of the permanency plan of reunification with Mother. J.A. and B.A., the foster parents,[7] were in

_____

[5] By this time, as M.P. had been placed in the care of her non-offending father, R.P., her child welfare case had been dismissed pursuant to § 41-3-438(3)(d), MCA.

[6] This included completing a CD evaluation and graduating from intensive outpatient treatment, complying with random drug and alcohol testing; completing a mental health evaluation and attending all ongoing individual counseling with an approved provider; completing parenting classes; attending all visits; meeting and communicating regularly with her assigned CPS worker; obtaining a job; obtaining appropriate, safe housing in a home-like setting suitable for children and calm enough for safety service providers; cooperating with the in-home safety plan; and engaging with necessary safety activities and resources to implement the in-home safety plan.

[7] It appears the Department and the District Court experienced some confusion as to the foster parents' role in the child welfare proceedings and in Child's life. The foster parents made appearances as they were entitled to do under § 41-3-422(9)(a), MCA. They did not seek formal intervention and, as will be discussed later, even if they had, they did not meet the statutory criteria

6

appearance and, through counsel, stated they had no objection. The District Court approved the permanency plan for reunification but deferred further action until Mother's sentencing in pending criminal cause, DC 23-1600. On October 30, 2024, Mother received three concurrent, five-year suspended sentences for one count of criminal possession of dangerous drugs and two counts of criminal endangerment.

¶11 The foster parents then filed a Motion to Set Dispositional Hearing, asserting they were noncustodial, non-offending parents entitled to placement, with sole custody superseding all prior custody orders, and seeking dismissal of the cause under § 41-3-438(3)(d), MCA. Mother opposed, arguing the foster parents lacked standing and were not "parents" under Title 41. She further argued the Plan was void *ab initio* because it was entered during the pendency of the initial child welfare case, DN 16-407, in violation of § 40-4-228, MCA, and *In re U.A.C.*, 2022 MT 230, ¶ 25, 410 Mont. 493, 520 P.3d 295.

¶12 In addition to Mother opposing the foster parents' motion, Child filed a Statement of Position in which Child asserted, through his counsel, that although he desired that the child welfare case be dismissed, he objected to granting foster parents sole legal custody as he wished to remain primarily in the care of Mother. He desired that the residential

___

necessary to do so. Throughout the current child welfare proceeding, the Department and the District Court inaccurately referred to the foster parents at various times as "legal guardians," "Legal Parents," "Legal Mother," and "Legal Father." None of these designations are accurate. No guardianship has ever been established over Child and, as previously indicated, there have been no judicial findings, conclusions, or order establishing foster parents to have a statutory parental interest in Child or parent-child relationship with Child. Throughout the child welfare proceedings, they more accurately should have been referred to as "foster parents" and, in cause DR 20-801, as "petitioners."

7

arrangement be inverted such that he would reside primarily with Mother and spend time with the foster parents on weekends and one week per month.

¶13 While awaiting the court's action, Mother's companion case involving P.P., was dismissed as she had successfully completed the in-home safety plan. After argument on April 6, 2025, the District Court ordered "the Motion to Dismiss filed by [foster parents] is GRANTED pursuant to MCA § 41-3-438(3)(d) and the Montana Supreme Court's holding in *In re S.S.*, 2012 MT 78."[8] The court further ordered the Plan in DR 20-801 to remain in full force and effect and the District Court therein to retain jurisdiction for further matters concerning Child. It is from this Order Mother appeals.

## STANDARD OF REVIEW

¶14 The parties agree that issues of justiciability, including standing, are questions of law which we review de novo. *Barrett v. State*, 2024 MT 86, ¶ 29, 416 Mont. 226, 547 P.3d 630; *In re R.N.*, 2024 MT 115, ¶ 8, 416 Mont. 462, 549 P.3d 452. Statutory interpretation is a question of law which we also review de novo. *State v. Payne*, 2021 MT 256, ¶ 14, 405 Mont. 511, 496 P.3d 546. In child dependency proceedings, we review conclusions of law for correctness. *In re A.C.*, 2004 MT 320, ¶ 9, 324 Mont. 58, 101 P.3d 761.

---

[8] In *In re S.S.*, a mother of two children removed from her care by the Department upon substantiated reports that her alcohol abuse had led to endangerment and physical neglect of the children, appealed the district court's order on disposition granting the children's father's motion to dismiss the action, awarding the father—as the nonoffending parent—sole custody of the children pursuant to § 41-4-438(3)(d), MCA. This Court upheld the disposition order; the mother's parental rights were not terminated, and the district court followed the statutory procedure of § 41-3-438(3)(d), MCA, in ordering placement of the children with the father and dismissing the case. *In re S.S.*, 2012 MT 78, 364 Mont. 437, 276 P.3d 883.

8

¶15   *Whether the District Court erred in granting primary custody to the foster parents and dismissing the cause under § 41-3-438(3)(d), MCA.*

¶16   Mother argues the foster parents lacked standing to intervene or seek custody or dismissal because they are not "parents" under Title 41 and Mother had not abandoned Child.

¶17   The Department responds that the foster parents were not granted intervenor status and although the foster parents could not intervene in the cause,[9] they were parties as the Department named them as a party in the initial petition, and they remained parties, without objection, for the pendency of the case. The Department further asserts that the foster parents had been adjudicated as nonparents with a parental interest and granted primary physical and shared legal custody of Child such that they were properly considered parties.

¶18   Title 41, chapter 3 governs child welfare proceedings. Section 41-3-102(20) defines, "Parent" as "a biological or adoptive parent or stepparent." Section 41-3-422(9), MCA, governs who may appear or intervene. Subsection (9)(a) grants foster parents the right to appear and be heard but expressly states that this "does not make that person a party":

> (a) Any person interested in any cause under this chapter has the right to appear. Any foster parent, preadoptive parent, or relative caring for the child must be given legal notice by the attorney filing the petition of all judicial hearings for the child and has the right to be heard. **The right to appear or to be heard does not make that person a party to the action.** Any foster

---

[9] The Department concedes that as Mother had not abandoned Child, even if the foster parents had sought to intervene, they would not have satisfied the statutory requirements to do so under §§ 41-3-422(9)(b) and -437(4), MCA.

9

parent, preadoptive parent, or relative caring for the child must be given notice of all reviews by the reviewing body.

Section 41-3-422(9)(a), MCA (emphasis added). Subsection (9)(b) permits intervention only "in a case in which abandonment has been alleged," as further defined in § 41-3-437(4), MCA:

> (b) A foster parent, preadoptive parent, or relative of the child who is caring for or a relative of the child who has cared for a child who is the subject of the petition who appears at a hearing set pursuant to this section may be allowed by the court to intervene in the action if the court, after a hearing in which evidence is presented on those subjects provided for in 41-3-437(4), determines that the intervention of the person is in the best interests of the child. A person granted intervention pursuant to this subsection is entitled to participate in the adjudicatory hearing held pursuant to 41-3-437 and to notice and participation in subsequent proceedings held pursuant to this chapter involving the custody of the child.

Section 41-3-422(9)(b), MCA. When §§ 41-3-422(9)(b) and -437(4), MCA, are read together, intervention is limited to cases in which abandonment has been alleged.

¶19 The Department concedes Mother did not abandon Child. Thus, the foster parents could not meet the statutory criteria for intervention. Their appearance as interested persons did not confer party status. The Department's assertion that listing them as "Legal Mother" and "Legal Father" in its Petition is, likewise, not persuasive. Where the Indian Child Welfare Act is not applicable, such as in this case, the parties to a child welfare proceeding include the parent(s) as defined in § 41-3-102(20) MCA, guardian, or other person or agency having legal custody of the subject child. Section 41-3-422(6), MCA. The Department concedes the foster parents do not meet the definition of a "parent" under § 41-3-102(20), MCA, as they are not a biological or adoptive parent, nor a stepparent, and thus they have no status as a parent to be a party. No guardianship has ever been ordered

10

with respect to Child and the agency having legal custody of Child was at all pertinent times the Department.

¶20 The Department and foster parents assert the foster parents were adjudicated a parental interest by virtue of the Plan. Mother contends the Plan was void *ab initio*, as the Plan in DR 20-801 was entered during the pendency of DN 16-407, in violation of § 40-4-228(1), MCA. Contrarily, the Department asserts that as the foster parents did not seek a parental interest during the pendency of the current child welfare case, § 40-4-228, MCA, does not apply. We are not persuaded by the Department's position.

¶21 "[T]he Legislature has set forth a number of distinct statutory schemes and criteria for judicial termination of parental rights and/or recognition of nonparent custody and visitation rights under Montana law." *Sayler v. Sun*, 2023 MT 175, ¶ 35, 413 Mont. 303, 536 P.3d 399. District courts must identify and adhere to the proper procedure and standards to be used in proceedings before them and must make and adhere to threshold determinations required by the statutory scheme. *Sun*, ¶ 35. The proper analysis requires an initial determination of the precise nature of the statutory nonparent claim at issue. *Sun*, ¶ 35. The mandatory legal condition precedent or prerequisite for nonparent entitlement to a "parenting plan" determination under Title 40, is a prior or predicate adjudication of a parental interest under § 40-4-228(1), MCA, upon proof of the substantive elements specified by § 40-4-228(2), MCA. *Sun*, ¶ 40.

¶22 The assertion that the foster parents were adjudicated as nonparents with a parental interest is unsupported. No petition was filed under §§ 40-4-228(1) or -211(4)(b), MCA; no party invoked the statutory procedure for adjudicating a nonparent parental interest; and

11

no court made findings, conclusions, or an order establishing that the foster parents had proved the statutory prerequisites for a parental interest or parent-child relationship. The document—a parenting plan—filed in DR 20-801 was the initiating document. It was not a petition to establish a parental interest, and the order adopting it contains only a generic best-interest determination. However, a generic best-interest finding cannot substitute for the threshold statutory adjudication required before a nonparent may obtain a parenting interest under Title 40, MCA. *Sun*, ¶¶ 35, 40. While § 40-4-228, MCA, provides the statutory scheme for parenting and visitation matters between a natural parent and a third party, this statute specifically does not apply if a separate action is pending under Title 41, chapter 3. Section 40-4-228(1), MCA.

¶23 Section 40-4-228(1), MCA, expressly limits the application of Title 40, MCA, in nonparent parental interest and visitation matters: "In cases when a nonparent seeks a parental interest in a child under 40-4-211 or visitation with a child, the provisions of this chapter apply unless a separate action is pending under Title 41, chapter 3." Thus, while § 40-4-228, MCA, provides the statutory mechanism for a nonparent to seek a parental interest or visitation, the statute itself makes that mechanism unavailable while a separate Title 41, chapter 3, proceeding is pending. The Department's position ignores that the Plan purporting to establish the foster parents' parental interest was entered into during the pendency of the prior child welfare proceeding DN 16-407 and, therefore, under § 40-4-228(1), MCA, could not have established a parental interest in the foster parents. Although the Plan allows the foster parents to care for Child during specified periods, it does not state any specific intention to create, nor does it create for foster parents, a parental

12

interest or a parent-child relationship. While Title 40, chapter 4 provides a means to adjudicate a parental interest to a nonparent, as the Department notes, nothing in the parental interest statutes provides that a parental interest equates to being a legal parent and nothing in the parental interest statutes support that a parental interest confers a nonparent with the constitutional right to parent. Again, there have been no judicial findings, conclusions, or order in any proceeding specifically finding a parental interest for foster parents pursuant to § 40-4-228(1), MCA, or a parent-child relationship between foster parents and Child under § 40-4-211, MCA. Whether such a parental interest is asserted to exist, and the basis for it, has not been adjudicated and is not the issue now before us. Based on the foregoing, although the foster parents were entitled to appear at proceedings as interested persons under § 41-3-422(9)(a), MCA, they were not, and are not, a party in this cause and had no authority to bring motions for disposition and dismissal. Accordingly, their Motion to Dismiss must be stricken.

¶24 Finally, Mother further asserts the District Court misapplied § 41-3-438(3)(d), MCA, by finding the foster parents to be non-custodial, non-offending parents, granting them primary custody of Child, and dismissing the cause thereunder. Section 41-3-438, MCA, sets forth the dispositions a district court may order after a child has been adjudicated a YINC. Specifically, § 41-3-438(3)(d), MCA, provides that if a child is found to be a YINC, the court may:

> order the placement of the child with the noncustodial parent, superseding any existing custodial order, and dismiss the proceeding with no further obligation on the part of the department to provide services to the parent with whom the child is placed or to work toward reunification of the child with

13

the parent or guardian from whom the child was removed in the initial proceeding[.]

Mother argues that as the foster parents do not meet the definition of a "parent" under Title 41, the District Court erred in applying § 41-3-438(3)(d), MCA, to them. The Department concedes the foster parents do not meet the definition of a "parent" as provided in § 41-3-102(20), MCA—they are not a "biological or adoptive parent or stepparent"—and, as such, the District Court erred in determining them to be "nonoffending parents." As the foster parents are not "parents" under Title 41, § 41-3-438(3)(d), MCA, and *In re S.S.* cannot be applied to them. The District Court erred in determining foster parents to be "noncustodial parents," granting them primary custody of Child, and dismissing the cause under § 41-3-438(3)(d), MCA.

¶25 Mother asks this Court to declare the Plan void *ab initio*, while the Department contends Mother voluntarily agreed to limiting her fundamental right to custody of Child by entering into the Plan and the District Court's dismissal of the child welfare proceeding merely resumed foster parents' and Mother's agreed custodial arrangement. As discussed above, questions concerning the validity of the Plan and any adjudication of a parental interest or parent-child relationship must be resolved in the separate domestic relations proceeding, DR 20-801. The posture of that case, however, cannot be understood without acknowledging the Department's role in creating the present circumstances. The significant delay in reunification—stemming first from the Department's failure to provide the reasonable efforts required to avoid removal and accomplish reunification, and later from the Department's advancement of a legal position it now concedes was incorrect—

14

prolonged Child's placement with the foster parents, and during this extended period, Child naturally developed a meaningful bond with them. As a result, Mother and the foster parents must now litigate parenting and contact issues under Title 40, a process that may not have been necessary had the Department fulfilled its statutory obligations in a timely and more even manner.[10]

¶26 The Department's role in creating the present posture does not authorize the District Court in this Title 41 proceeding to give effect to an unadjudicated nonparent parental interest or to require Mother to litigate further in DR 20-801 before Child may be returned to her care. The remedy for the error in DN 23-294 must be entered in DN 23-294. The Department may not rely on the existence of DR 20-801, or on a plan entered during the pendency of DN 16-407 without a statutory adjudication of a nonparent parental interest, to avoid the result required by Mother's successful completion of her treatment plan, satisfaction of the conditions for return, and demonstrated fitness to parent. Nothing in this Opinion prevents any party from seeking appropriate relief in DR 20-801 through proper Title 40 procedures, but the existence of that separate proceeding does not provide a lawful basis to continue Department involvement or to withhold Child's return to Mother in this child-welfare case. Should there be additional litigation in DR 20-801, Mother may be

---

[10] This is not to say that Mother shares no responsibility for the current situation. Her conduct and choices brought about parenting insufficiencies and the circumstances of her relapsing were detrimental to her children and deteriorated the Department and foster parents' trust in her. She has the obligation to accept responsibility for her actions and her role in bringing about the current situation, and to also work diligently to maintain a stable, drug and alcohol-free life, and to act in the best interest of Child to support the relationship he has developed with foster parents who, to their credit, have remained a stable constant in Child's life.

15

able to seek assistance in securing legal representation through Montana Legal Services or may seek assistance from the District Court in securing pro bono representation.

## CONCLUSION

¶27 As the foster parents are not a party, had no right to intervene, and are not "parents" as defined in Title 41, they had no authority to seek disposition and dismissal as noncustodial, nonoffending parents under § 41-3-438(3)(d), MCA. The District Court misapplied this statute in granting them custody and dismissing the cause thereunder. It is undisputed that Mother successfully completed her treatment plan and satisfied the conditions for return of Child to her care. Mother has successfully addressed the Department's concerns appropriately addressing her substance use disorder and maintaining sobriety for a considerable period of time; participating in counseling; maintaining a safe and stable home environment appropriate for children; completing her GED and being accepted to college; completing parenting classes; and maintaining employment. Mother has demonstrated her fitness to parent and is successfully parenting children on a full-time basis. The record supports dismissal of DN 23-294 based on Mother's successful completion of her treatment plan, meeting the conditions for return, and being a fit parent.

¶28 We reverse the District Court's August 18, 2025 Order to Dismiss and remand to the District Court to strike foster parents' Motion for Dismissal, and to issue an order dismissing cause DN 23-294 based on Mother's successful completion of her treatment plan, meeting the conditions for return, and being a fit parent.

16

_____  
                        Justice

We Concur:

_____

_____

_____

_____  
                        Justices

17